Andy JORDAN and Willie Shrum, Partners, d/b/a Safety Cab Company, and Henry M. Richardson, Plaintiffs in Error,

v.

Delouris Earleen JOHNSON, a minor who brings this action through her next friend, Milford Johnson, Defendant in Error.

No. 37532.

Supreme Court of Oklahoma.

July 2, 1957.

Rehearing Denied Sept. 10, 1957.

Richardson & Cavanagh, by Arthur L. Cavanagh, Lawton, for plaintiffs in error.

Burton, Jones & Sasser, by Russell G. Jones, Lawton, Walter Hubbell, Walters, for defendant in error.

JOHNSON, Justice.

Parties will be referred to as they appeared in the trial court.

This action was brought by plaintiff through her next friend to recover damages for personal injuries sustained in a two-car collision. From a jury verdict and judgment based thereon, the defendants appeal.

Defendants contend that the court erred in overruling their demurrer to plaintiff's evidence and their motions for a directed verdict and a new trial.

The substance of their complaint is that the court erred in giving instructions on the statutory law when he should have instructed on the city traffic ordinances; erred in the admission of incompetent evidence, and that the verdict was excessive.

In considering specific contentions of error as to any given instruction, we must consider the instructions as a whole and construe them together. Wasson v. Davis, Okl., 283 P.2d 807. But where, as herein, the record does not disclose that the defendant saved exceptions to the questioned instructions, we will review the instructions only to determine whether they are free from fundamental error, id.

In the recent case of Riss & Company v. Reed, Okl., 301 P.2d 208, 211, we said that "[U]nder 47 O.S.1951, § 22.11 and 47 O.S.1951, § 121.7, cities and towns are given certain specified powers to regulate traffic. Where under these statutes a city has adopted traffic ordinances and such ordinances are not in conflict with state statutes, and are adequate and in evidence, the court should instruct upon the ordinances and not upon the statutes."

The numbered instructions about which the plaintiff complains read as follows:

"No. 7—You are further instructed that the driver of a motor vehicle desiring to make a turn across a through highway or street between intersections into private driveways or parkways, or off of such private driveway or parkway or shoulder of a highway onto a through highway or street, should exercise extra precaution before attempting such turn, since such turns are less frequent than at intersections and not anticipated to the same extent by other motorists upon the highway.

"No. 8—It is also the duty of the driver of a motor vehicle in making a turn off of the shoulder of a highway or street, or out of a private driveway or parkway between intersections onto a through highway or street to yield the right-of-way to the driver of the motor vehicle travelling upon the through highway or street, regardless of the directions such vehicle may be travelling on said through highway or street.

"No. 9—You are further instructed that no person shall turn a vehicle from a direct course, or move right or left upon a roadway, or come onto a roadway off of a private drive or shoulder of the roadway, unless and until such movement can be made with reasonable safety. No person shall turn any vehicle without giving an appropriate signal in the manner as provided by statute, as follows:

"'In making a left turn, hand and arm extended horizontally. In making a right turn hand and arm extended upward.' If such automobile making the turn onto the highway is equipped with directional lights, then directional lights may be used in connection with hand signal.'"

Plaintiff pleaded the pertinent city ordinances of Lawton, and same were in evidence and provided as follows, to-wit:

"Article IX. Turning Movements

"Section 53. Left and Right Turns—Where Prohibited.

"No vehicle or animal shall turn to the left when going into or coming out of an alley, nor shall such vehicle or animal cross any street or highway when going into or coming out of an alley.

"The driver of any vehicle intending to make a left turn across the street, or a right turn, in entering or emerging from any driveway or entrance way, or the driver of any vehicle being backed out of any driveway or entrance way shall first yield the right-of-way to any other traffic proceeding on the street which is near enough to constitute an immediate hazard, and in no event shall the driver make, or attempt to make, such left or right turn when such turn would or does interfere with the normal movement of, or delay or block, other traffic using the street.

"Article IX. Turning Movements

"Section 56. Starting, Stopping, Turning.

"No driver of any vehicle or animal upon the streets and highways of Lawton, shall start a vehicle which is stopped, standing or parked, nor stop, nor turn from a direct course to the right or to the left, unless and until such movement can be made with reasonable safety, and no driver shall stop a vehicle, nor turn a vehicle to the right or to the left without giving continuously, during not less than the last

fifty (50) feet traveled by the vehicle before making such movement, an appropriate signal as hereinafter provided."

■■ The facts in this case upon which the questioned instructions were to be applied are substantially as follows: The record discloses that plaintiff was injured in a collision between a one-half ton panel truck which plaintiff was driving and a taxi-cab belonging to defendants, Andy Jordan and Willie Shrum, co-partners, and driven by their agent and employee, Henry M. Richardson.

The collision occurred immediately east of the intersection of "C" Avenue and 3rd Street in the City of Lawton. The point of impact was about 30 feet south of the north curb line of "C" Avenue and about 30 feet east of the east line of 3rd Street. The driveway of the cab company's offices intersects "C" Avenue near the southwest corner of the block, so near in fact that there is no parking space west of it. At the time of the accident there were cars parked at an angle just east of the driveway, and there was a mail truck double parked just behind them. The taxi driver drove the cab 30 feet south into "C" Avenue to the place of collision or impact, without looking to the left, intending, so he said, to make a right turn into the left lane of traffic in order to go south to 3rd Street. There was nothing to prevent the driver of the taxi-cab from making a right hand turn within the space occupied by the angle-parked cars and the double-parked mail truck to his left, and this he could have done without entering that portion of the left lane of "C" Avenue in which plaintiff was driving, "C" Avenue being 70 feet wide at that point.

Moreover, the evidence of the eye-witnesses to the accident discloses that the taxi driver drove out of the driveway into "C" Street without giving a signal of any kind and failed to yield the right of way to the plaintiff without seeing her and was stopped by the impact of the collision and could not have known whether the panel truck, driven by the plaintiff, was near enough to constitute an immediate hazard, which conduct on defendants' part constituted reckless and careless driving without regard to the safety of persons and property in violation of 47 O.S.1951 § 121.3 et seq.; and, furthermore, we see no material difference in the application of the language of the city ordinances and that of the statute, and, if there is, the ordinances in evidence would be in conflict with the statute governing the matter. In any event, we fail to see where defendants are materially prejudiced by the controversial instructions, because when the instructions are considered as a whole in the light of both the statutes and city ordinances, and the evidence on the issues, they fairly covered the issues involved, both as to the law and facts. The failure of the court to base the questioned instructions solely upon the city ordinances in evidence is not reversible error. The error, if any, is harmless because it did not affect the substantial rights of the adverse party; and no judgment should be reversed or affected by reason of such error. 12 O.S.1951 § 78. See also 12 O.S.1951 § 636.

■ The defendants next contend that the trial court erred in overruling their demurrer to the evidence and the motion for a directed verdict for the reason that plaintiff failed to establish by competent medical evidence that her alleged injuries were proximately caused by the negligence of defendants.

It is undisputed that plaintiff was injured in the accident. Only the extent of her injuries is questioned. The qualifications of Dr. M., a chiropractic physician, are likewise unchallenged. They base their argument on the sole proposition that the medical testimony did not show a causal connection between plaintiff's injury and the alleged negligence of the defendants. Defendants point out the fact that the physicians who treated plaintiff did not testify. The medical evidence was that of Dr. M., to whom we have already referred. He testified that he examined plaintiff on May 14, 1955, approximately two months after

the accident, and again on March 12, 1956. He further testified that after taking the history of the plaintiff's past health, and the history of the accident, including prior treatments, her complaints and how she felt, and after giving her a general physical examination covering the different parts of her body, that it was his opinion that she had sustained a sprain type of injury, probably whiplash in type, involving the neck. He thought that the deeper structures of the neck were twisted and sprained as a result of the head being thrown to one side, the front or back at the time of the accident, producing stiffness and pain upon movement, and expansion; that at his last examination she had not fully recovered, was still suffering pain, and that since she had not fully recovered from the date of the accident and up until the date of the last examination, which was approximately a year, very little, if any, improvement at all might be expected. In this connection the record discloses that upon cross examination of the plaintiff by the defendants she testified that she was treated for two days by a medical doctor in Memorial Hospital in Lawton; that after leaving the hospital she suffered nausea and vomiting; that she, with her parents, returned to this physician who treated her in the hospital, and that he told her she had pinched nerves and would have to let mother nature build callouses around them. This evidence, we think, must be given weight with the other evidence.

When all of the evidence, medical and otherwise, is considered we think it sufficient to show a causal connection between the accident and the plaintiff's injuries, and not subject to a demurrer or motion for a directed verdict. For a narration of the applicable legal philosophy in a similar factual situation, see Peppers Gasoline Company v. Webber, 186 Okl. 471, 98 P.2d 1087.

■ Other complaints of alleged incompetent evidence are interposed, such as the plaintiff's evidence of measurement and treatment of her legs, and the doctor's statement to her that her right leg was shorter than the left, for which she received treatment. Also defendants complain of the admission of the plaintiff's testimony relative to the impairment of her normal sexual life with her husband as a result of her injuries. These matters, if erroneously admitted, were harmless.

We next consider the contention of defendants that the verdict was excessive.

The defendants concede that this court has repeatedly held that in determining whether a verdict is excessive, each case must stand on its own facts and circumstances, citing Oklahoma Ry. Co. v. Strong, 204 Okl. 42, 226 P.2d 950, and other cases. But they point to the rule that passion, prejudice or partiality constitute grounds for a finding that a judgment is excessive, citing Green v. Burns, 204 Okl. 415, 230 P.2d 892.

The plaintiff sought damages in the sum of $15,000 for alleged injuries which she claims were permanent in nature and caused her excruciating pain and suffering, all of which was the result of the negligence of defendants. A general verdict for $4,250 was rendered in her favor. No loss of earning capacity or medical or hospital expenses are shown—only pain and suffering are shown for a basis of recovery. The only medical evidence throwing any light on plaintiff's injuries was that of Dr. M., who after taking the history of her past health and the history of the accident concluded that she had sustained certain injuries resulting in pain and suffering at the time of his last examination, which was about a year after the accident. He further stated that very little improvement in the future could be expected in such cases.

■ Damages for a personal injury involving pain and suffering or impairment of health and strength, whether such conditions are permanent or temporary, are based upon the theory of compensation, and the amount assessed by the jury will not be disturbed because excessive unless a just mind is forced to the conclusion that the

jury has either failed to comprehend the case or has been influenced by passion or prejudice. Hall v. Chicago, B. & Q. Ry. Co., 145 Iowa 291, 122 N.W. 894.

In the case at bar we are unable to say that the verdict was excessive or that there were any fundamental errors affecting the substantial rights of the defendants. The long established rule of this court is that if the jury's verdict and judgment based thereon, in actions of legal cognizance, is supported by any evidence reasonably tending to sustain the verdict and judgment, the same will be affirmed on appeal.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and DAVISON and CARLILE, JJ., concur.

HALLEY, WILLIAMS, and JACKSON, JJ., concur in result.

BLACKBIRD, J., dissents.